IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JIMMY T. DAVIS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) Civil No. 15-cv-169-CJP[1] |
| | ) |
| **JAMES CROSS, JR.,** | ) |
| | ) |
| **Respondent.** | ) |

### MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

This matter is now before the Court on Jimmy T. Davis' petition for writ of habeas corpus under 28 U.S.C. §2241. (Doc. 1).

In 1999, a jury in the District of Kansas convicted petitioner of bank robbery, use of a firearm during a crime of violence, and being a felon in possession of a firearm. He was sentenced to 240 months on the bank robbery count and 262 months on the felon in possession count, to be served concurrently, and to 60 months on the use of a firearm during a crime of violence count, to be served consecutively.

At issue here is the conviction for use of a firearm during a crime of violence, in violation of 18 U.S.C. §924(c). Petitioner's conviction arises out of his aiding and abetting his co-defendant's use of a firearm during a bank robbery. Davis argues that he is entitled to habeas relief on that conviction under *Rosemond v. United States*, 134 S. Ct. 1240 (2014). At the Court's direction,

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 17.

respondent filed a supplemental response, Doc. 36. Petitioner filed a reply at Doc. 39.

## Relevant Facts and Procedural History

Jimmy T. Davis and Stephen G. Haslip robbed a bank together and were tried together. The Tenth Circuit Court of Appeals summarized the evidence in its order affirming Haslip's conviction and sentence as follows:

> The Fall River State Bank in Fall River, Kansas, was robbed on the morning of October 17, 1996. Two men entered the bank; one approached Alicia Ashenfelter, the teller stationed closest to the front door, and requested two rolls of dimes. The second man approached tellers Peggy Anderson and Christine Burt at the next teller window. As Ms. Ashenfelter turned to Ms. Anderson to request two rolls of dimes, she noticed the second man, later identified as Mr. Haslip, was pointing a gun at Ms. Anderson. Brandishing the gun and causing it to "click" twice, Mr. Haslip instructed Ms. Anderson to "give [him] all of the money."
>
> Ms. Anderson put money from her station, including the bank's bait money into a white or clear plastic bag Mr. Haslip provided. Mr. Haslip then forced Ms. Anderson and Ms. Burt toward the vault. He forced Ms. Burt to go into the vault to retrieve more money and instructed Ms. Anderson to attend to a customer who appeared in the drive-up lane. After the customer left, Mr. Haslip ordered Ms. Anderson and Ms. Burt into the vault.
>
> In the meantime, Mr. Haslip's co-defendant, Mr. Jimmy T. Davis, instructed Ms. Ashenfelter to place all the money from her teller station into a blue plastic bag. After she had done so, he ordered her into the vault with Ms. Anderson and Ms. Burt. The two men then closed and latched the vault door so it could not be opened from the inside. While in the vault, the tellers activated the silent alarm and prepared a description of the two robbers. They were released from the vault when customers entered the bank ten to fifteen minutes later. The total loss to the Fall River State Bank, a federally insured institution, was $13,909.00. Ms. Burt, who was conducting a personal financial transaction at the time of the robbery, also lost $ 100.00.
>
> Shortly after the robbery, the Wilson County Sheriff placed a roadblock at a main junction outside Fall River. Approximately one minute after establishing the roadblock, a Ford Probe crested the hill and approached

> the roadblock. As law enforcement officers watched, the car abruptly stopped, turned around, and drove away from the roadblock. The Sheriff noticed two people were inside the car.
>
> The Sheriff and his officers immediately pursued the Ford onto the property of Mr. Wayne O'Dell. After losing sight of the car for a short time, they found it abandoned in a brushy area, down the side of an embankment. The car's engine was running, the transmission was in drive, the driver's window was down, and the passenger door was open. Mr. O'Dell ultimately spotted Mr. Haslip lying along a fence row. When directed by a Kansas Highway Patrol trooper to stand up and move toward him, Mr. Haslip stated he was alone, "was just hitchhiking," and "wanted to get out of the way" when he saw the police.
>
> Mr. Davis was arrested nearly two hours later, after a Highway Patrol trooper and K-9 unit found him hiding in trees and bushes on the O'Dell property. Law enforcement personnel continued to search the property, but found no other cars or suspects. They discovered the Ford Probe had been stolen from the driveway of Ms. Teresa Flynn, who lived in a small community outside Fall River. After getting Ms. Flynn's consent, officers searched the car and found a blue plastic bag containing a loaded Smith and Wesson Silver 9mm and a loaded Dan Wesson .357 magnum revolver. The white plastic bag contained $13,009.00, including all the bank's bait money. The remaining $1,000.00 was never recovered.

*United States v. Haslip*, 160 F.3d 649, 651-652 (10th Cir. 1998).

On direct appeal, Davis argued that (1) the trial court erred in admitting pre-trial identification evidence, (2) his convictions for bank robbery and for violation of §924(c) violate the double jeopardy clause, and (3) there was insufficient evidence to convict him of bank robbery and of being a felon in possession of a firearm. His conviction and sentence were affirmed. *United States v. Davis*, 166 F.3d 1222, 1999 WL 29160 (10th Cir. 1999)(unpublished order).

The Court summarized the evidence with regard to the conviction for being a felon in possession of a firearm as follows:

> The record establishes that Ms. Ashenfelter identified Mr. Haslip as the bank robber who brandished a gun and demanded money from Ms. Anderson's station. She identified Mr. Davis as the man who demanded money from her teller's station and instructed her to put the money in a blue plastic bag he was carrying. Both men then acted in concert to lock the tellers in the bank vault.
>
> A short time later, law enforcement officers observed a Ford Probe with two people inside abruptly turn to avoid a roadblock. Officers later found Mr. Davis hiding near the abandoned Ford. They seized a blue plastic bag containing a loaded Smith and Wesson Silver 9mm and a loaded Dan Wesson .357 magnum revolver from the trunk of that same car. They also found a white plastic bag containing most of the bank's bait money. A jury could reasonably infer from this evidence that Mr. Davis was not only aware of the guns, but also had possession of, or at least a right of physical access to, the guns found in the bag he had carried in the bank. Accordingly, we uphold the firearm conviction.

*Davis*, 1999 WL 29160 at *4.

Davis also filed a motion under 28 U.S.C. §2255. He argued that (1) the government's failure to prove that he received the firearms as they travelled in interstate commerce deprived the district court of jurisdiction over the felon in possession of a firearm charge; (2) the indictment was defective because the "entire language" of 18 U.S.C. §2 (Aiding and Abetting) did not appear in Counts 1, 2 and 4; (3) the restitution order was unconstitutional; and (4) counsel was ineffective for failing to present a diminished capacity defense. *United States v. Davis,* 19 Fed. Appx. 775, 776 (10th Cir. 2001)(unpublished order). With regard to the last point, the Court held that "A diminished capacity defense would have been, as the district court observed, 'inconsistent with Davis' primary defense at trial - that he was not present during the bank robbery.'" *Davis*, 19 Fed. Appx. at 778.

4

**Applicable Law**

**1.     Law Applicable to §2241 Petition**

Generally, petitions for writ of habeas corpus under 28 U.S.C. §2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence.  See, *Valona v. United States*, 138 F.3d 693, 694 (7th Cir.1998).

A federally convicted person may challenge his conviction and sentence by bringing a motion pursuant to 28 U.S.C. §2255 in the court which sentenced him. Indeed, a §2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction."  *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). The statute generally limits a prisoner to *one* challenge of his conviction and sentence under §2255.  A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §2255(h).

It is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under §2241.  28 U.S.C. §2255(e) contains a "savings clause" which authorizes a federal prisoner to file a §2241 petition where the remedy under §2255 is "inadequate or ineffective to test the legality of his

5

detention." 28 U.S.C. § 2255(e). See, *United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir.2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998)

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that the decision he relies upon post-dates his first §2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). See also, *Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

2.   *Rosemond v. United States*

Justus Rosemond was convicted of violating §924(c) by aiding and abetting the use of a firearm during the commission of a drug trafficking crime. At trial, the court refused his proposed jury instruction on aiding and abetting liability. On direct appeal, he challenged the aiding and abetting jury instruction given by the court. The Tenth Circuit rejected his argument, and the Supreme Court granted certiorari "to resolve the Circuit conflict over what it takes to aid and abet

6

a §924(c) offense." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014).

Rosemond argued that he could be convicted of aiding and abetting a §924(c) violation only if he intentionally took "some action to facilitate or encourage his cohort's use of the firearm." The Supreme Court disagreed with that position, but agreed that the jury instruction given by the court was erroneous for a different reason. *Rosemond*, 134 S. Ct. at 1244-1245.

18 U.S.C. § 2(a) provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense is "punishable as a principal." In *Rosemond*, the Supreme Court noted the long-standing rule that "a person is liable under §2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at 1245. The question before the Court was "how those two requirements – affirmative act and intent – apply in a prosecution for aiding and abetting a §924(c) offense." *Ibid.*

In general, a person can be convicted of aiding and abetting an offense without proof that he took part in every element of the offense. Thus, a person can aid and abet a violation of §924(c) by acting to bring about either, as in *Rosemond*, the drug trafficking offense or the use of a firearm; it is not necessary that he physically participate in both. "In helping to bring about one part of the offense (whether trafficking drugs or using a gun), he necessarily helped to complete the whole. And that ends the analysis as to his conduct." *Rosemond*,

134 S. Ct. at 1246-1247.

The government must show more, however, than physical participation in one or more elements of the violation of §924(c). The Supreme Court described §924(c) as establishing a "combination crime," meaning that it "punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm." Accordingly, "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." In other words, the evidence must establish that the defendant intended to bring about the "illegal scheme in its entirety – including its use of a firearm." *Rosemond*, 134 S. Ct. at 1248-1249.

The Supreme Court noted that it had previously found the intent requirement for aiding and abetting "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." The Court cited earlier Supreme Court cases from 1947 and 1954 to illustrate this point. The Court went on to say that "The same principle holds here: An active participant in a drug transaction has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Rosemond*, 134 S. Ct. at 1248-49. The Court went on to explain:

> For all that to be true, though, the §924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that

8

> enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. . . . For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away.

*Rosemond*, 134 S. Ct. at 1249-50.

In footnote 9, appended to the above-quoted paragraph, the Court explained that "Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond*, 134 S. Ct. at 1250, n.9.

The Supreme Court went on to hold that the jury instruction given by the district court was erroneous because it did not require the jury to find that Rosemond had to have "advance knowledge" that a firearm would be present. The Supreme Court did not, however, vacate Rosemond's conviction. Rather, it remanded for further proceedings. *Rosemond*, 134 S. Ct. at 1251-1252.

The Seventh Circuit considered the effect of *Rosemond* in *United States v. Newman*, 755 F.3d 543 (7th Cir. 2014), a case on direct appeal. Newman had pleaded guilty to being a felon in possession of a firearm, and then moved to withdraw his plea. He appealed from the district court's denial of his motion to

9

withdraw his plea.  The facts established at the plea hearing were as follows:

> Newman and James Misleveck escaped from Black River Correctional Center in Wisconsin. Misleveck soon stole a shotgun and ammunition. Newman and Misleveck then cooperatively stole a car and kidnapped its driver. Newman approached the driver and asked for a cigarette; while she was distracted, Misleveck approached her from behind, pointed the shotgun at her, and ordered her to get into the rear seat. Newman kept control of the victim for five hours while Misleveck drove. The pair released her and stole a pickup truck.

*Newman*, 755 F.3d at 544.

The Seventh Circuit held that the above facts established aiding and abetting liability under *Rosemond* because "Newman knew that Misleveck had and was wielding a gun, and he had plenty of time to walk away. Instead he maintained the cooperative venture. Under *Rosemond*, Newman is liable to the same extent as Misleveck."  *Newman*, 755 F.3d at 546.

## **Analysis**

Respondent concedes that *Rosemond* is a statutory construction case and that it announces a substantive rule that applies retroactively to cases on collateral review.  Nevertheless, he points out that a number of courts have held that *Rosemond* does not apply retroactively to cases on collateral review.  See, cases cited at Doc. 35, p. 9.  The Seventh Circuit has not yet spoken on the issue, but has a case under submission, *Montana v. Cross*, Case No. 14-3313, wherein the issue has been raised.

This Court finds it unnecessary to determine whether *Rosemond* applies retroactively because, even if it does, petitioner would not be entitled to habeas relief.  Therefore, the Court will assume for purposes of the present case that

10

*Rosemond* applies retroactively to cases on collateral review.

There is also an issue here as to whether Davis meets the second of the *Davenport* requirements. Davis is not challenging the aiding and abetting jury instruction that was given in his case.[2] Rather, he argues that he could not be convicted of aiding and abetting Haslip's use of a firearm because he did not have advance knowledge that Haslip would use a firearm to rob the bank. This is an issue that he could have raised on direct appeal or in his §2255 motion.

*Rosemond* was from the Tenth Circuit, the same Circuit in which Davis was convicted. The principal argument that Rosemond raised, that he had to have acted to facilitate the use of the firearm, was contrary to established Tenth Circuit law. *Rosemond*, 134 S. Ct. at 1244-1245. It does not, however, appear that Tenth Circuit precedent foreclosed the argument that Davis makes here regarding the necessity of advance knowledge that Haslip had a firearm. *Ibid.*

In recent cases following *Davenport*, the Seventh Circuit has used a higher standard for the second of the *Davenport* requirements. The higher standard requires the petitioner to show not only that the case he relies on post-dated his §2255 motion, but also that "his claim was 'foreclosed by binding precedent' at the time of his direct appeal and §2255 motion." *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014), citing *Brown v. Caraway*, 719 F.3d 583, 595 (7th Cir. 2013), and *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012). Because it

---

[2] Davis' reply was evidently prepared by another inmate. The author of the reply states that Davis cannot remember whether the defense objected to the aiding and abetting instruction at trial. See, Doc. 39, p. 6, n.1. Regardless, the Tenth Circuit's opinions on direct appeal and on appeal from the denial of his §2255 motion make it clear that Davis did not pursue an issue as to the aiding and abetting instruction on appeal. And, he has not challenged the instruction in this habeas proceeding.

11

appears that Davis' argument was not foreclosed by binding Tenth Circuit precedent, §2255 was arguably not inadequate to test the legality of his detention and he is precluded from bringing a §2241 petition. However, as respondent has not explicitly raised this argument, and petitioner cannot prevail on the merits in any event, the Court will assume for purposes of the present case that Davis can properly bring a *Rosemond* claim in a §2241 petition.

Davis bases his claim for habeas relief on the following version of the facts underlying his conviction:

> The court records will reflect that I went into the bank [and] was getting change for a hundred from the teller and was in the process [of] robbing the bank with a note when my co-defendant, the get away driver, entered the bank with a gun and proceeded to rob the bank. I had no advance knowledge that my co-defendant was going to pop up in the bank, let alone rob it with a gun while I [was] there. That was NOT the plan we had nor did I know he any [sic] weapon.

Doc. 1, p. 3, paragraph 10.

In his reply to the original response, Davis reiterated his position as to the facts:

> As was explained in Davis' §2241 petition, and is documented in the district and appellate courts; Davis and his co-defendant (Haslip) planned to rob the bank in question. Haslip was the get-away driver (waiting outside in the car) while Davis was in the bank by himself with the note speaking with the teller. While doing this Haslip entered the bank, pulled a gun, and proceeded to turn a note robbery into an armed robbery – without Davis' knowledge.

Doc. 13, p. 3.

In his reply, Davis sets forth an expanded version of the facts:

Davis and his co-defendant Haslip conspired to rob a bank. Haslip was the get-away driver while Davis was to rob the bank with a note. Davis proceeded to enter the bank and ask the teller for change for $100.00.

> United States v. Haslip, 160 F.3d 649, 651-652 (10th Cir. 1998). Approximately 1 minute later Haslip entered the bank and while walking past Davis towards the back of the bank threw a white plastic grocery bag towards Davis while simultaneously pulling a gun and directing the tellers to fill the opaque plastic bag he had just given to Davis. After the tellers had done as instructed by Haslip, Haslip, and Haslip alone directed the tellers into the bank vault in the back while Davis retreated to the outside of the bank. After Haslip had the tellers in the vault, he, and he alone, shut the vault door and left.

Doc. 39, p. 4.

Petitioner's citation to *United States v. Haslip*, 160 F.3d 649, 651-652 (10th Cir. 1998), in the above paragraph is improper. The Tenth Circuit's opinion in no way supports the statements for which it is cited. In fact, the cited portion of the Tenth Circuit's opinion flatly contradicts petitioner's representations.

Davis "objects to Respondents [sic] reliance on the prosecutors [sic] version of events in previous appeals . . . as those are the government's narrative of events and not the record." Doc. 39, p. 1. The Court rejects this argument as factually incorrect; the Tenth Circuit was summarizing the evidence that was presented at trial in its opinions, and not merely reciting the government's version of the facts. See, *Haslip*, 160 F.3d at 651-652; *Davis*, 1999 WL 29160 at *1.

Petitioner's versions of events are, of course, contradicted by the evidence that was presented at petitioner's trial. For starters, there was no evidence that, in planning the bank robbery, Davis and Haslip agreed that Haslip would wait in the car while Davis robbed the bank with a note and not a firearm. Rather, at trial, Haslip denied that he robbed the bank or possessed a gun on the day of the

13

robbery. He testified that "he bumped into Mr. Davis, an old friend, at a café" on the day of the robbery and that they "agreed to go look for a marijuana field outside of Fredonia, near the O'Dell property." *Haslip*, 160 F.3d at 652. Consistent with Haslip's testimony, petitioner's "primary defense at trial [was] that he was not present during the bank robbery." *Davis*, 19 Fed. Appx. at 778.

Further, based on his current version of the facts, Davis denies that he continued to actively participate in the bank robbery after Haslip produced the firearm. According to him, he did not order the teller to put money in his bag or order her into the vault. Rather, he claims he was "always at the entrance of the bank…." Doc. 39, p. 4. Obviously, the evidence that was presented at trial contradicts Davis' claims.

The testimony of the bank tellers established that Davis had a blue plastic bag in the bank, not a white one, and that Davis ordered bank teller Alicia Ashenfelter to get into the vault with the other two tellers after she had placed money in the blue bag.[3] The evidence also established that both Davis and Haslip "closed and latched the vault door so it could not be opened from the inside." *Haslip*, 160 F.3d at 651. See also, *Davis*, 1999 WL 29160 at *4.

Davis seems to believe that *Rosemond* affords him an opportunity to rewrite the facts of his case. This is incorrect. Nothing in the Supreme Court's decision requires (or permits) a habeas court to wipe the slate clean of the

---

[3] The police later found a blue plastic bag containing two loaded firearms in the get-away car, along with a white plastic bag containing most of the money taken from the bank. The Tenth Circuit found that this evidence supported Davis' conviction for possession of a firearm by a convicted felon. Davis, 1999 WL 29160 at *4.

evidence that was considered by the jury that convicted petitioner and to consider only the petitioner's new and contradictory version of the facts.

The evidence that was presented at trial is sufficient for a jury to convict Davis of a §924(c) violation after *Rosemond*. According to the Tenth Circuit's description of the evidence, two men entered the bank and one of them, Davis, asked teller Alicia Ashenfelter for two rolls of dimes. When Ms. Ashenfelter turned to the next teller to ask for dimes, she saw that the second man, Haslip, was pointing a gun at the next teller. Haslip brandished the gun, "clicked" it twice, and told the second teller to "[g]ive [him] all of the money." *Haslip*, 160 F.3d at 651.

Crucially, this evidence shows that, at the time that Haslip brandished the gun, Davis had merely asked the teller for two rolls of dimes. He had not yet begun to rob the bank. Yet, he did not withdraw from the crime when Haslip brandished the firearm. Instead, he proceeded to tell Ms. Ashenfelter to put the money from her station into his blue plastic bag, and he then ordered her to get into the vault with the other two tellers who had been ordered there by Haslip. Both men then closed and latched the vault door and left the bank. *Haslip*, 160 F.3d at 651.

Davis argues that he had no "realistic opportunity" to walk away from the bank robbery because "the whole crime took less than a minute and Haslip had the keys to the vehicle." He also points out that Haslip was a convicted murderer and might have shot him if he "did anything to put Haslip in danger." Doc. 39,

15

pp. 4-6. This argument does not carry the day. *Rosemond* does not require the government to show that the defendant could abandon the crime with absolutely no possibility of negative consequences to himself; it only requires that the evidence show that he had a "realistic opportunity to quit the crime." *Rosemond*, 134 S. Ct. at 1249-1250. Under the evidence presented at Davis' trial, a jury could believe that Davis could have left the bank on foot when Haslip produced the firearm. Instead, he actively participated in robbing the bank, locking the tellers in the vault, and fleeing with Haslip, knowing that his accomplice had a firearm.

The Supreme Court's footnote 9 is particularly applicable to the facts established at Davis' trial: "Of course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond*, 134 S. Ct. at 1250, n.9. The evidence at trial established that Davis' participation in the crime did not even begin until after Haslip brandished the firearm and that Davis continued to act with Haslip to rob the bank and lock the tellers in the vault even after he knew Haslip had a firearm. He then fled the scene with Haslip, the bank's money, and two firearms in a stolen car. As in *Newman*, Davis "had plenty of time to walk away. Instead he maintained the cooperative venture." *Newman*, 755 F.3d at 546. Because the evidence presented

at trial was sufficient for a jury to infer that Davis had advance knowledge that Haslip intended to use a firearm in the course of the bank robbery, *Rosemond* does not provide a reason to grant Davis habeas relief.

## Conclusion

Jimmy T. Davis' Petition for a Writ of Habeas Corpus Under 28 U.S.C. §2241 (Doc. 1) is **DENIED**.

The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

**DATE:   October 29, 2015.**


            s/ Clifford J. Proud
            **CLIFFORD J. PROUD**
            **UNITED STATES MAGISTRATE JUDGE**

### Notice

If petitioner wishes to appeal the denial of his petition, he may file a notice of appeal with this court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(B). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

Petitioner is further advised that, if he intends to file a motion pursuant to Federal Rule of Civil Procedure 59(e), that motion must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the 60-day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.

It is not necessary for petitioner to obtain a certificate of appealability from this disposition of his §2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).